UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHARLES GREGORY EMLEY,

    PLAINTIFF,

v.

NATIONAL CREDIT SYSTEMS, INC.,

    DEFENDANTS.

Case No.:

***JURY DEMAND***

## COMPLAINT

Plaintiff Charles Gregory Emley ("Plaintiff" or "Mr. Emley"), by and through the undersigned counsel, and with knowledge as to Plaintiff's own acts, upon information, belief, and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery alleges against Defendant National Credit Systems, Inc. as follows:

## PRELIMINARY STATEMENT

1. This is an action for an actual, statutory, and punitive damages, costs, and attorneys' fees pursuant to 15 U.S.C. §§ 1681, *et seq.* ("Fair Credit Reporting Act" or "FCRA") and 15 U.S.C. §§ 1692, *et seq.* ("Fair Debt Collection Practices Act" or "FDCPA").

2. The FCRA imposes duties on persons who furnish information to a consumer reporting agency ("furnisher"). *See* 15 U.S.C. §§ 1681s-2(a), (2), (4), (5).

3. When a consumer, like Plaintiff, disputes the accuracy of information through a CRA, those disputes are transmitted to the party furnishing the information, here Defendant National Credit Services, Inc. ("NCS").

1

4. The FCRA demands that the furnisher conduct a reasonable investigation of the consumer's dispute and correct or delete information the furnisher learns is inaccurate or cannot otherwise verify after receipt of a dispute from a consumer reporting agency ("CRA").

5. When such dispute investigations are ongoing and credit reporting of the subject account is also taking place, the furnisher of information must note that the consumer has disputed the information when transmitting account data to CRAs.

6. Today, furnishers such as NCS have their own independent duties under the FCRA, principally those found at 15 U.S.C. § 1681s-2. The duties on furnishers under the FCRA were enacted in 1996. THE CONSUMER CREDIT REPORTING REFORM ACT OF 1996, Pub. L. No. 104-208 (1996).

7. Specifically, the furnisher must satisfy five duties after receipt of notice of a consumer dispute from a CRA. 15 U.S.C. § 1681s-2(b)(1)(A-E). *See also Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir. 2016); *Boggio v. USAA Federal Savings Bank*, 696 F.3d 611 (6th Cir. 2012); *Johnson v. MBNA Am. Bank, NA,* 357 F.3d 426 (4th Cir. 2004); *Van Veen v. Equifax Info.,* 844 F.Supp.2d 599, 605 (E.D. Pa. 2012) (applying *Johnson*).

8. NCS violated the FCRA, Section 1681s-2(b), when it received Plaintiff's disputes from a CRA and failed to reasonably investigate those disputes. Instead, discovery will show all NCS did was consult its own records about the account and confirm to the CRAs the inaccurate information it was already reporting.

9. NCS also violated the FCRA when it failed to report the collection account as in disputed by Mr. Emley and after receipt of his direct dispute.

10. Similarly, the purpose of the FDCPA is to protect purported consumer debtors from unfair and unconscionable debt collection tactics.

11. The FDCPA was enacted to protect all consumers from debt collectors who seek to collect debts through illegal means and who engage in false and misleading, unfair, and deceptive practices in the process of attempting to collect a debt.

## JURISDICTION & VENUE

12. This Court has jurisdiction over Plaintiff's federal claims pursuant to 15 U.S.C. § 1681p, 15 U.S.C. § 1692k(d) and 28 U.S.C § 1331 and his state law claims pursuant to 28 U.S.C § 1367, which allow claims under the FCRA, FDCPA and TX DCA to be brought in this Court.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

14. Plaintiff Charles Gregory Emley is an adult individual and residing in in this District. Plaintiff is a "consumer" as defined by 15 U.S.C. §§ 1681a(c) and § 1692a(3).

15. Defendant NCS is a Georgia corporation with its principal place of business located at 2200 Ford Rd., # 438, Dallas, TX 7523. NCS is also a "debt collector," as defined by 15 U.S.C. § 1692a(6). Upon information and belief, NCS is registered as a debt collector with the State of Texas and conducts business by way of attempting to collect debts in the State of Texas, including this District. NCS is also a "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## FACTUAL ALLEGATIONS

16. In or around November 2021, an impostor used some of Plaintiff's personal identifying information (PII) to open an apartment lease with Cortland Farmers Apartments.

3

17. In or around January 2022, Mr. Emley discovered NCS attempted to collect a debt from him for a past due apartment lease or damages, or both, with Cortland Farmers Apartments (hereinafter, referred to as the "Account").

18. NCS credit reported the Account to the CRAs as a collection account and with a past due balance of $ 375.

19. The Account information credit reported by NCS is inaccurate because the underlying debt does not belong to Plaintiff.

20. Mr. Emley never lived at Cortland Farmers Apartments.

21. Mr. Emley never had a lease agreement with Cortland Farmers Apartments.

22. Mr. Emley disputed the validity of the debt to NCS.

23. NCS received his dispute.

24. NCS continued to credit report the Account to at least one consumer reporting agency.

25. NCS did not validate the debt to Mr. Emley.

26. Mr. Emley reported the theft of his identity to the Dallas Police Department.

27. Mr. Emley reported the theft of his identity to the Federal Trade Commission ("FTC").

28. Mr. Emley completed and submitted an FTC Identity Theft Report to the FTC.

29. An FTC Identity Theft Report is an identity theft report as defined by the FCRA. *See* 15 U.S.C. §1681a(q)(4).

30. Mr. Emley disputed the Account to at least one CRA.

31. In support of his dispute, Mr. Emley supplied at least one CRA with additional relevant information, including but not limited to proof of residency, the Dallas Police Report,

FTC Identity Theft Report, Plaintiff's dispute letters, proof of identity or other supporting documents (hereinafter, referred to as "additional relevant information").

32.     During the relevant time period, NCS received notice of Mr. Emley's dispute from at least one consumer reporting agency.

33.     Upon information and belief, at least one CRA provided NCS with additional relevant information in support of Plaintiff's dispute.

34.     NCS received additional relevant information from at least one CRA in support of Plaintiff's dispute.

35.     NCS received additional relevant information in support of Plaintiff's dispute directly from Plaintiff.

36.     Notwithstanding, in connection with any FCRA investigation of the disputed information, NCS failed to conduct any handwriting analysis, contact third parties, such as the Cortland Famers Apartments, Dallas Police Department, FTC, or Plaintiff.

37.     In connection with any FCRA investigation of the disputed information, NCS failed to or review all underlying account information or documents, or both.

38.     Upon information and belief, at least two consumer reporting agencies notified NCS that the Account was suppressed from Plaintiff's file.

39.     However, NCS continued to credit report the Account to the CRAs as belonged to Plaintiff, past due and with a balance owed by Plaintiff to NCS on the Account.

40.     In other words, NCS continued its collection efforts, including but not limited to credit reporting the Account, against Plaintiff to collect on the Account and after notice from Plaintiff and the CRAs that the debt was the result of fraud.

41. To date, Mr. Emley has not received notice from NCS acknowledging the Account does not belong to him.

## COUNT ONE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. §§ 1681s-2(b)(1)(A-B)

42. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

43. On at least one occasion within the past two years, by example only and without limitation, NCS violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

44. On one or more occasions within the past two years, by example only and without limitation, NCS violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by a CRA in connection with Plaintiff's indirect disputes.

45. Based on the way the CRAs responded to Plaintiff's disputes, representing that NCS "verified" the supposed accuracy of its reporting, Plaintiff alleges that at least one CRA did in fact forward Plaintiff's dispute via an Automated Consumer Dispute Verification ("ACDV") to NCS.

46. NCS understood the nature of Plaintiff's disputes when it received the ACDVs from a CRA.

47. Notwithstanding the above, NCS follows its standard and systemically unlawful process when it receives an ACDV dispute notice from a CRA.  Basically, all NCS does is review its own internal computer screens for the account level information and repeat back to the ACDV system the same information it already has credit reported to the CRAs.

48. When NCS receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether the information already in its computer system is accurate.

49. In other words, NCS does not perform a systemic or thorough investigation of the consumer's dispute received from a CRA.

50. As a result of NCS's violations of 15 U.S.C. §§ 1681s-2(b)(1)(A) and (B), Plaintiff suffered actual damages, including but not limited to: adverse credit action, damage to reputation, interference with normal and usual activities, loss of time, out-of-pocket expenses, invasion of privacy, embarrassment, humiliation, and other mental and emotional distress.

51. NCS's FCRA violations were willful, rendering it liable for punitive damages pursuant to 15 U.S.C. § 1681n. In the alternative, NCS was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

52. Accordingly, Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from NCS pursuant to 15 U.S.C. §§ 1681n and o.

53. As a result of NCS's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive, and statutory damages, in an amount to be determined by the jury.

### COUNT TWO – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. §§ 1692e and 1692f

54. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

55. At all times material herein, Plaintiff was a "consumer" as defined by 15 U.S.C. § 1692a(3), since he is a natural person allegedly obligated to pay a consumer debt.

56. At all times material herein, Plaintiff's alleged debt was a "debt" as defined by 15 U.S.C. § 1692a(5).

57. At all times material herein, NCS was a "debt collector" as defined by 15 U.S.C. § 1692a(6).

58. NCS falsely stated that Mr. Emley owed a debt on the Account.

59. As detailed above, Mr. Emley did not have any connection to the Account.

60. Despite Mr. Emley's repeated disputes to NCS and the CRAs that the Account did not belong to him, Defendant continued to claim that the Account belonged to him and that he owed the debt.

61. Defendant's credit reporting of the Account was a false representation of the character, amount, and legal status of a debt in violation of the FDCPA. 15 U.S.C. § 1692e(2)(A)(10).

62. NCS continued claims that Mr. Emley owed the debt for the Account after his disputes was also a false representation and deceptive practice in violation of the FDCPA. 15 U.S.C. § 1692e.

63. NCS repeatedly used unfair or unconscionable means, or both, to collect or attempt to collect the debt, specifically the disputed collection Account, from Plaintiff. NCS did so even though Plaintiff doesn't owe the debt because it is the result of fraud, in violation of 15 U.S.C. § 1692f.

64. NCS's violations of the FDCPA caused Mr. Emley to worry about his financial situation and the impact on his credit, as well as stress and frustration.

65. Mr. Emley also lost time because of his efforts to investigate why NCS had alleged he owed a debt on the Account, researching how to dispute the debt, writing disputes, and traveling to and from the post office concerning the disputes.

66. As a result, Mr. Emley is entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs against NCS pursuant to 15 U.S.C. § 1692k.

67. As a result of NCS's failure to comply with the requirements of the FDCPA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, statutory damages, in an amount to be determined by the jury.

## JURY DEMAND

68. Plaintiff requests a jury trial on all claims.

## PRAYER

69. WHEREFORE, Plaintiff prays for relief as follows:

   a) Determining that Defendant negligently and/or willfully violated the FCRA;

   b) Determining that Defendant violated the FDCPA;

   c) Awarding actual damages, statutory, and punitive damages as provided by the FCRA and FDCPA;

   d) Awarding reasonable attorneys' fees and costs as provided by the FCRA, and FDCPA; and

   e) Granting further relief, in law or equity, as this Court may deem appropriate and just.

Respectfully submitted on December 12, 2022,

*/s/ Micah S. Adkins*
Micah S. Adkins
TX BAR NO. 24088777

**THE ADKINS FIRM, P.C.**

One Lincoln Centre
5400 Lyndon B. Johnson Fwy., Suite 1200
Dallas, Texas 75240
(214) 974.4030 Telephone
MicahAdkins@ItsYourCreditReport.com
*COUNSEL FOR PLAINTIFF
CHARLES GREGORY EMLEY*